UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                              :
                                                   :     Chapter 11
51 EAST 73RD ST LLC                                :
                                                   :     Case No. 20-10683 (SHL)
                              Debtor.              :
------------------------------------------------------------------x

**DECLARATION OF JEFFREY L. SALTIEL, ESQ. IN SUPPORT OF MOTION FOR ORDER PURSUANT TO (1) 11 U.S.C. § 1112(b) DISMISSING CASE, (2) 11 U.S.C. § 543(d) (a) EXCUSING RECEIVER FROM COMPLIANCE WITH SUBSECTIONS (A), (B) AND (C) OF § 543, AND (b) AUTHORIZING THE RECEIVER TO CONTINUE IN CUSTODY, POSSESSION AND CONTROL OF DEBTOR PROPERTY, (3) 11 U.S.C. § 362(D), GRANTING RELIEF FROM THE AUTOMATIC STAY, AND/OR (4) PURSUANT TO 11 U.S.C. §§ 361 AND 363(E) DIRECTING THE DEBTOR TO PROVIDE ADEQUATE PROTECTION**

I, Jeffrey L. Saltiel, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I am counsel for the court appointed Receiver, Bruce Lederman (the "Receiver"). I have personal knowledge of the facts set forth herein, and I submit this Declaration in support of NYC NPL Servicing LLC's ("NYC NPL"), motion ("Motion")[1] seeking an order (1) pursuant to 11 U.S.C. § 1112 dismissing the case, (2) pursuant to 11 U.S.C. § 543(d), (i) excusing the Receiver from compliance with subsections (a), (b) and (c) of Section 543 of the Bankruptcy Code, and (ii) authorizing the Receiver to continue in custody, possession and control of certain of the Premises, (3) pursuant to 11 U.S.C. § 362(d) granting relief from the automatic stay, and/or (4) pursuant to 11 U.S.C. §§ 361 and 363(e) directing the Debtor to pay monthly adequate protection payments to NYC NPL.

2. On July 17, 2018, the State Court appointed John G. Hall as Receiver of the Premises in the Foreclosure Action, and directed him, among other things, to "demand, collect

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

and receive from the occupants, tenants and licensees in possession of said premises, …, all the rents and license fees thereof now due or unpaid or hereafter to become fixed or due...", and to take charge and enter into possession of the Premises.

3. Thereafter, by Order dated November 5, 2018, Bruce N. Lederman was appointed Receiver in place of John G. Hall.

4. The Receiver Orders directed the Debtor, occupants, and tenants, among others, and their agents, officers and the like to attorn to the Receiver all rents, license fees and other charges then due or thereafter due, and directed the Receiver to institute and carry on all legal proceedings for the collection of use and occupancy monies and rents then due or thereafter to become due, and commence summary or other proceedings for the removal of any tenant or tenants or other persons therefrom.

5. The Debtor never complied with the directives in the Receiver Orders. It outright refused to turn over any rents collected from the tenants who occupied the Premises at the time of the Receiver's appointment. More egregiously, subsequent to the Receiver's appointment, the Debtor engaged in a blatant fraud on the Receiver and the State Court by advertising apartments in the Premises as being available for illegal short-term occupancy, then illegally rented apartments and absconded with all rents it collected from the short-term occupants. Upon discovering the Debtor's fraudulent scheme, the Receiver filed an emergency motion in the State Court seeking an order of contempt.

6. On December 12, 2019, the State Court entered an order finding the Debtor, Simone Ender and Monique Ender Silberman in civil contempt of the State Court (the "<u>Contempt Order</u>") by reason of:

a. their failure to turn over to the Receiver within five (5) days after the Receiver becomes qualified any deposits or advances of rental as security under any lease or license agreement affecting space in the premises affected by this action;
b. their failure to turn over to the Receiver all rent lists, orders, unexpired and expired leases. agreements, correspondence, notices and registration statements relating to rental spaces or facilities in the premises;
c. their failure to turn over to the Receiver all rents collected from and after the date of July 17, 2018;
d. their failure to refrain from collecting the rents, license fees and other charges of said premises after July 17, 2018, and
e. their failure to refrain from renting out apartment units in the subject building after July 17, 2018.
f. their failure to turn over keys and documents requested by the Receiver by March 15, 2019.

A copy of the Contempt Order is annexed to the Klestadt Declaration as **Exhibit "F"**.

7. The Contempt Order also found certain illegal occupants of the Premises to be in civil contempt and directed that they deliver possession of the apartments they were illegally occupying to the Receiver. After significant cost and effort, and with the assistance of the New York Police Department, the Receiver was ultimately able to take possession of the illegally occupied apartments, despite the Debtor's and the occupant's efforts at all relevant times to thwart the directives of the State Court, and the Premises is now vacant.

8. On January 2, 2020, the State Court entered a judgement of foreclosure and sale (the "Foreclosure Judgment") in favor of NYC NPL, as assignee of 73RD Park LLC, against the Debtor and Simone Ender, among others. A copy of the Foreclosure Judgment is annexed to the Klestadt Declaration as **Exhibit "F"**. The Foreclosure Judgement, which confirmed the report of the Referee, provided in part that the property located at 51-53 East 73rd Street, New York, NY 10021 (Block: 1388, Lot: 30) (the "Premises") was to be sold at auction under the direction of the Referee. A copy of the Referee's report is annexed hereto as **Exhibit "G"**. The Foreclosure Judgment also provided that the Referee shall pay to NYC NPL, from the proceeds of sale, $24,353,114.61 with interest at the note rate from November 19, 2019 until entry of the judgment,

3

and thereafter at the legal rate, together with any advances which NYC NPL made for taxes, insurance, principal, and interest and any other charges due to prior mortgages or to maintain the Premises.

9. The Referee provided proper notice that the foreclosure sale was scheduled to occur on March 4, 2020, but on March 3, 2020, the Debtor commenced this case in an effort to delay the sale.

10. The Receiver has serious concerns that upon the turnover of the Premises to Debtor (if so required), the Debtor would continue to engage its year-long campaign of obfuscation, secretion and dissipation of assets.

11. Based upon Debtor's past conduct, there is an extremely legitimate concern that any rents collected by the Debtor will disappear and the Debtor would begin the process of once again allowing illegal and unauthorized tenancies in the Premises, which would frustrate the ability of the Debtor's estate to realize the highest value for the Premises, which is to sell it free of occupants.

12. There is little doubt that the best and highest use of the Premises would be to sell it vacant of all tenancies. Yet, the Debtor and its alleged manager have engaged in a persistent campaign to frustrate the Receiver's efforts to maintain the building vacant of illegal occupants. The Debtor or its representatives have on numerous occasions changed the Receiver's locks at the Premises, have advertised apartments in the Premises to be available for illegal short term occupancies, and have allowed unauthorized persons to illegally occupy apartments in the Premises without the Receiver's knowledge or consent, and without turning over any rent to the Receiver.

13. The Debtor and its alleged manager have repeatedly demonstrated their willingness to ignore their obligations to the Debtor's creditors and have ignored numerous orders of the State Court.

14. As a result, the Receiver has spent considerable time and financial resources trying to remediate the damages caused by the failure to turn over rents and near continuous efforts to illegally rent out apartments in the Premises after the Receiver's appointment, and even after the State Court directed the Debtor to stop doing so.

15. Indeed, the Receiver was forced to move for and obtained an order of the State Court holding the Debtor, its manager and several illegal occupants in the Premises in civil contempt. Among other things, the State Court's contempt order directed the Debtor and its manager to turnover to the Receiver all rents they had collected and directed the New York Police Department, the Sheriff or the Marshal to assist the Receiver in removing the illegal occupants that the Debtor allowed into the Premises. To date, the Debtor has not turned over any rent to the Receiver.

16. The Debtor and its alleged manager have consistently put the interests of the Debtor's members ahead of the interests of its creditors and there is little doubt that it will continue to do so during the pendency of this case. It would be in the best interest of the Debtor and its creditors for the Receiver to remain in possession the Premises to prevent the Debtor from allowing tenants to occupy the Premises and thereby frustrate the ability of the Debtor's estate or its creditors' ability to sell the Premises for its highest value.

17. The information contained in this Declaration is true and correct to the best of my knowledge and belief.

Date: March 11, 2020
New York, New York

_____
Jeffrey L. Saltiel