**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott

*Counsel to NYC NPL Servicing, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                         :
                                                              :          Chapter 11
51 EAST 73RD ST LLC                                           :
                                                              :          Case No. 20-10683 (SHL)
                                          Debtor.             :
-------------------------------------------------------------x

### PRELIMINARY OBJECTION TO DEBTOR'S APPLICATION IN SUPPORT OF REQUEST FOR USE OF CASH COLLATERAL AND FOR TURNOVER

NYC NPL Servicing LLC ("NYC NPL"), by its undersigned counsel, hereby files its preliminary objection to the Debtor's Application in Support of Request for Use of Cash Collateral and for Turnover ("Application") [ECF Docket No.: 4], and respectfully states as follows:

### PRELIMINARY STATEMENT

As set forth in NYC NPL Servicing LLC's ("NYC NPL") Motion Seeking an Order (1) Pursuant to 11 U.S.C. § 1112 Dismissing the Case, (2) Pursuant to 11 U.S.C. § 543(d), (i) Excusing Bruce Lederman, in His Capacity as Court Appointed Receiver (the "Receiver") for 51 East 73rd St LLC (the "Debtor") from Compliance With Subsections (a), (b) and (c) of Section 543 of the Bankruptcy Code, and (ii) Authorizing the Receiver to Continue in Custody, Possession and Control of Certain of the Debtor's Assets, (3) Pursuant to 11 U.S.C. § 362(d)

Granting Relief from the Automatic Stay, and/or (4) pursuant to 11 U.S.C. §§ 361 and 363(e) directing the Debtor to pay monthly adequate protection payments to NYC NPL [ECF Docket No.: 8] (the "NYC NPL Motion")[1], the sole purpose of the Debtor's bad faith filing was to frustrate NYC NPL's legitimate efforts to enforce its rights by impeding a foreclosure sale of the real property known as 51-53 East 73rd Street, New York, NY 10021 (Block: 1388, Lot: 30) (the "Building"), which was scheduled to proceed the day after the Debtor commenced this case. There is no legitimate bankruptcy purpose to this case.  The Debtor has no income and is significantly underwater on its mortgage obligations.   It also absolutely, unconditionally and irrevocably assigned all of its rights title and interest in all leases and rents relating to the Building to NYC NPL, as successor to the Debtor's prepetition lender.  The Debtor was left with only a revocable license to collect rents prior to the occurrence of a default.  That license was revoked as a result of the Debtor's defaults, and NYC NPL, through its predecessor in interest 73rd Park LLC, and through its own post-petition conduct, has taken sufficient affirmative legal steps to protect its right to enforce the assignment.  As a result, even if the Court were to allow the Debtor to retake possession of the Building so that it could begin allowing illegal short term occupancies in the Building's apartments, as the Debtor admits it intends to do in the Application, the Debtor could not use any of such rent to fund administrative expenses, or a plan, because such rents would not be property of the estate.  To be clear, NYC NPL objects to the Debtor's admitted strategy of illegally renting apartments in the Building for short term occupancy, and it does not consent to the Debtor's use of any rents it might collect.

Even if the Court determined that such rents were property of the estate, and therefore cash collateral, the Debtor could not use the rent proceeds without NYC NPL's consent or an

---

[1] The factual background and arguments set forth in NYC NPL's Motion are adopted and incorporated in their entirety, as if fully set forth herein.

2

order of the Court finding that NYC NPL was adequately protected. NYC NPL would be entitled to significantly more adequate protection that what the debtor has offered. NYC NPL holds a judgment in the amount of more than $25,000,000, which entitles it to interest at 9% under New York State law. Therefore, if the Court were to determine that the Debtor should be allowed to take possession of the Building and to lease apartments for illegal short term occupancies, NYC NPL is entitled to adequate protection in the form of monthly interest payments in the amount of monthly interest that is accruing on the Judgment, which would be equal to approximately $186,083.

If the Court determines that dismissal of the case, as requested in NYC NPL's Motion, is not appropriate, the Court should nonetheless deny that portion of the Application seeking an order compelling the Receiver to turn over all property to the Debtor. As set forth in NYC NPL's Motion, it would be in the best interests of the Debtor's creditors if the Court entered an order pursuant to 11 U.S.C. § 543(d) excusing the Receiver from turning over the Receivership Assets (as defined below) to the Debtor and authorizing the Receiver to remain in possession and control of the Receivership Assets. There is little doubt that the best and highest use of the Building would be to sell it vacant of all tenancies. Yet, the Debtor and its alleged manager have engaged in a continuous campaign to frustrate the Receiver's efforts to maintain the building vacant of illegal occupants. The Debtor or its representatives have on numerous occasions changed the Receiver's locks at the Building, have advertised apartments in the Building to be available for illegal short term occupancies, and have allowed unauthorized persons to illegally occupy apartments in the Building without the Receiver's knowledge or consent, and without turning over any rent to the Receiver.

The Debtor and its alleged manager have repeatedly demonstrated their willingness to ignore their obligations to the Debtor's creditors and have ignored numerous orders of the State Court mandating that they cease interfering with the Receiver's performance of his duties. As a result, the Receiver has spent considerable time and financial resources trying to remediate the damages caused by the failure to turn over rents and consistent efforts to illegally rent out apartments in the Building after the Receiver's appointment, and even after the State Court directed the Debtor to stop doing so. Indeed, the Receiver was forced to move for and obtained an order of the State Court holding the Debtor, its manager and several illegal occupants in the Building in civil contempt. Among other things, the State Court's contempt order directed the Debtor and its manager to turnover to the Receiver all rents they had collected and directed the New York Police Department, the Sheriff or the Marshal to assist the Receiver in removing the illegal occupants that the Debtor allowed into the Building. To date, however, the Debtor has not turned over any rent to the Receiver, and has thereby frustrated and impeded NYC NPL's rights and remedies.

The Debtor and its alleged manager have consistently put the interests of the Debtor's members ahead of the interests of its creditors and there is little doubt that it will continue to do so during the pendency of this case. It would be in the best interest of the Debtor's creditors for the Receiver to remain in possession of the Premises to prevent the Debtor from allowing tenants to occupy the Premises and thereby frustrate the ability of the Debtor's estate or its creditors' ability to sell the Premises for its highest value.

For the reasons set forth herein and in NYC NPL's Motion, the Application should be denied in its entirety.

# BACKGROUND

1.　　On December 16, 2016, the Debtor executed, acknowledged and delivered to CREIF 113 LLC ("Initial Lender") an Amended and Restated Promissory Note (the "Note") in the principal sum of $15,250,000, which was guaranteed by Simone Ender.　As security for the Debtor's repayment of the Note, the Debtor delivered to the Initial Lender an Agreement of Consolidation, Extension and Modification of Mortgage, dated as of December 16, 2016 (the "Mortgage"), whereby the Debtor mortgaged to the Initial Lender the Premises, together with all buildings and appurtenances thereto, all rental income and all fixtures and articles of personal property annexed to or used in connection with the Premises.

2.　　The Debtor absolutely, unconditionally and irrevocably assigned all leases and rents to the Initial Lender (the "Assignment of Leases and Rents", and together with the Note and Mortgage, the "Loan Documents"). A copy of the Assignment of Leases and Rents is annexed to the Declaration of Tracy L. Klestadt [ECF Docket No.: 10] ("Klestadt Declaration") as **Exhibit "A"**.　On or about December 16, 2016, the Initial Lender assigned the Note and Mortgage to CREIF (LENDER) LLC.　The assignment was properly recorded.　On or about September 18, 2017, CRIEF (LENDER) LLC assigned the Mortgage and the Note to the Initial Lender.　The assignment was properly recorded.　On or about September 18, 2017 the Initial Lender assigned the Note, the Mortgage and the Assignment of Leases and Rents (collectively, the "Loan Documents") to 73rd Park LLC.　The assignment was properly recorded.

3.　　The Debtor defaulted under the Loan Documents by failing to pay (i) a late charge due for untimely July 2017 monthly interest payments, and (ii) the August 2017 monthly interest payment.　As a result of the Debtor's default, 73RD Park LLC commenced a foreclosure action

(the "<u>Foreclosure Action</u>") against the Debtor, among others, in the Supreme Court of the State of New York, New York County (the "<u>State Court</u>").

4.      On July 17, 2018, the Hon. Judith McMahon, J.S.C. of the Supreme Court of the State of New York, New York County (the "<u>State Court</u>") appointed John G. Hall as Receiver of the Premises in the Foreclosure Action, and directed him, among other things, to "demand, collect and receive from the occupants, tenants and licensees in possession of said premises, …, all the rents and license fees thereof now due or unpaid or hereafter to become fixed or due...", and to take charge and enter into possession of the Premises.  Thereafter, by Order dated November 5, 2018, Bruce N. Lederman was appointed Receiver in place of John G. Hall.  A copy of the November 5, 2018 and the July 17, 2018 Orders ("collectively, the "<u>Receiver Orders</u>") are annexed to the Klestadt Declaration as **Exhibit "B".**

5.      The Receiver Orders directed the Debtor, occupants, and tenants, among others, and their agents, officers and the like to attorn to the Receiver all rents, license fees and other charges then due or thereafter due, and directed the Receiver to institute and carry on all legal proceedings for the collection of use and occupancy monies and rents then due or thereafter to become due, and commence summary or other proceedings for the removal of any tenant or tenants or other persons therefrom.

6.      In August 2018, 73RD Park LLC filed a motion seeking entry of summary judgment in its favor, and on May 16, 2019, the State Court entered an order granting summary judgment and appointing a referee to compute the amount due to 73rd Park LLC.

7.      On May 16, 2019, the State Court entered an order granting summary judgment against the Debtor and Simone Ender, and appointing Bruno F. Codispoti, Esq., as Referee (the

"Referee").  A copy of the summary judgment order is annexed to the Klestadt Declaration as **Exhibit "C"**.

8.　　On June 12, 2019, 73RD Park LLC assigned all of its right title and interests in the Loan Documents to NYC NPL.  A copy of the assignment documents is collectively annexed to the Klestadt Declaration as **Exhibit "D"**.  On application of NYC NPL, NYC NPL was substituted as plaintiff in the Foreclosure Action.

9.　　On November 25, 2019, the Referee issued his Report of Amount Due.  A copy of the Referee's Report is annexed to the Klestadt Declaration as **Exhibit "G"**.

10.　　The Debtor never complied with the directives in the Receiver Orders.  It outright refused to turn over any rents collected from the tenants who occupied the Premises at the time of the Receiver's appointment.  More egregiously, subsequent to the Receiver's appointment, and in willful and contumacious disregard of the Receiver Orders, the Debtor engaged in a blatant fraud on the Receiver and the State Court by advertising apartments in the Premises as being available for illegal short-term occupancy, then illegally rented apartments and absconded with all rents it collected from the short term occupants.  Upon discovering the Debtor's fraudulent scheme, the Receiver filed an emergency motion in the State Court seeking an order of contempt.

11.　　On December 12, 2019, the State Court entered an order finding the Debtor, Simone Ender and Monique Ender Silberman in civil contempt of the State Court (the "Contempt Order") by reason of:

  a. their failure to turn over to the Receiver within five (5) days after the Receiver becomes qualified any deposits or advances of rental as security under any lease or license agreement affecting space in the premises affected by this action;

  b. their failure to turn over to the Receiver all rent lists, orders, unexpired and expired leases. agreements, correspondence, notices and registration statements relating to rental spaces or facilities in the premises;

  c. their failure to turn over to the Receiver all rents collected from and after the date of July 17, 2018;

d. their failure to refrain from collecting the rents, license fees and other charges of said premises after July 17, 2018, and

e. their failure to refrain from renting out apartment units in the subject Premises after July 17, 2018.

f. their failure to turn over keys and documents requested by the Receiver by March 15, 2019.

A copy of the Contempt Order is annexed to the Klestadt Declaration as **Exhibit "E"**.

12.     The Contempt Order also found certain illegal occupants of the Premises to be in civil contempt and directed that they deliver possession of the apartments they were illegally occupying to the Receiver.  After significant cost and effort, and with the assistance of the New York Police Department, the Receiver was ultimately able to take possession of the illegally occupied apartments, despite the Debtor's and the occupant's efforts at all relevant times to thwart the directives of the State Court, and the Premises is now vacant.

13.     On January 2, 2020, the State Court entered a judgement of foreclosure and sale (the "Foreclosure Judgment") in favor of NYC NPL, as assignee of 73rd Park LLC, against the Debtor and Simone Ender, among others.  A copy of the Foreclosure Judgment is annexed to the Klestadt Declaration as **Exhibit "F"**.  The Foreclosure Judgement, which confirmed the Referee Report, provided, in part, that the Premises was to be sold at auction under the direction of Bruno F. Codispoti, Esq., in his capacity as Referee.  The Foreclosure Judgment directed that the Referee pay to NYC NPL, from the proceeds of sale, $24,353,114.61 with interest at the note rate from November 19, 2019 until entry of the judgment, and thereafter at the legal rate, costs and disbursements as taxed, publication and advertising fees, together with any advances which NYC NPL made subsequent to the Judgment in connection with the maintenance of the Premises.

14.     The Referee provided proper notice that the foreclosure sale was scheduled to occur on March 4, 2020, but on March 3, 2020, the Debtor commenced this case in an effort to delay the sale.

I.   **It is in the Best Interests of the Debtor's Creditors to Excuse the Receiver's Compliance with Section 543(a), (b) and (c) of the Bankruptcy Code and Authorize Him to Continue in Possession of the Receivership Assets.**

15.   For the reasons set forth herein, and in NYC NPL's Motion and the Declaration of Jeffrey Saltiel, dated March 11, 2020 [ECF Docket No. 9], it is in the best interests of the Debtor's creditors to excuse the Receiver's compliance with Section 543(a), (b) and (c) of the Bankruptcy Code and authorize him to continue in possession of the Building. As a result, the Court should deny that portion of the Application that seeks to compel the Receiver to turn over property to the Debtor.

II.   **Rents That the Debtor Might Collect from the Building are Not Property of the Estate, and Therefore Not Cash Collateral.**

16.   In the Assignment of Leases and Rents, the Debtor absolutely, unconditionally and irrevocably assigned the leases and rents to NYC NPL, as successor to the Debtor's pre-petition lender. See Klestadt Declaration, **Exhibit "A"**. Although New York courts have held that an assignment is not an absolute transfer of title to rents, "an assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents." *641 Ave. of Americas Ltd. P'ship v. 641 Assocs., Ltd.*, 189 B.R. 583, 591 (S.D.N.Y. 1995). NYC NPL's predecessor in interest, 73rd Park LLC, took sufficient affirmative steps to make the assignment effective by commencing the Foreclosure Action, which resulted in the appointment of the Receiver. *In re Soho 25 Retail, LLC*, No. ADV. 11-1286-SHL, 2011 WL 1333084, at *7 (Bankr. S.D.N.Y. Mar. 31, 2011)(This Court determined that rents not property of the estate where the Debtor assigned rents and leases to its lender and the lender took affirmative steps to make the assignment effective including commencing a foreclosure action, requesting appointment of a receiver, and seeking relief from the automatic

stay). In addition to the prepetition actions, the NYC NPL also took a significant affirmative step to enforce its interests after the Debtor's bankruptcy filing by seeking relief from the automatic stay that had been imposed by the Bankruptcy Code. *Id*.

17. In this case, rents are not property of the estate because the Assignment of Leases and Rents left the Debtor with nothing more than a revocable license to collect rents prior to the occurrence of an event of default, which was revoked by NYC NPL's predecessor in interest well prior to the Petition Date, and the Mortgage and Note remain unsatisfied. *Id*.

**III. If the Court Determines That It Will Require the Receiver to Turn Over Possession of the Building to the Debtor and Use NYC NPL's Cash Collateral, NYC NPL is Entitled to Adequate Protection Beyond That Which the Debtor Proposes to Provide.**

18. Sections 361(1) of the Bankruptcy Code entitle a secured creditor to adequate protection to the extent the automatic stay results in a decrease in the value of the underlying property. *See* 11 U.S.C. §361(1). Further, §363(e) prohibits a debtor's use of secured property without the payment of adequate protection to the secured party. *See* 11 U.S.C. §363(e).

19. The legislative history for Section 361 "makes clear that the purpose of providing adequate protection is to ensure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy." *In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); *see also In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 405 (Bankr. S.D.N.Y. 2001) (the adequate protection required under§363(e) "is the performance for which [the creditor] has contracted"). If this case is allowed to proceed, and the Debtor is authorized to use the Building, and use any rents collected therefrom, which are, at the very least, NYC NPL's collateral, then NYC NPL is entitled to adequate protection. *In re White Plains Dev. Corp.*, 137 B.R. 139, 143 (Bankr. S.D.N.Y. 1992).

20.     Pursuant to New York law, NYC NPL is entitled to statutory interest in the amount of 9% per annum on the full amount of the Judgment.  For that reason, NYC NPL requests that the Court enter an order pursuant to §§ 361(1) and 363(e) of the Bankruptcy Code, requiring Debtor to pay NYC NPL adequate protection for the debtor's post-petition use of the Building, monthly adequate protection payments equal to the monthly interest that is accruing at 9%, which equals $186.083.96.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court enter an order denying the Debtor's Motion in its entirety, together with such other relief as the Court deems appropriate.

Date:   March 17, 2020
        New York, New York

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ Tracy L. Klestadt*
    Tracy L. Klestadt
    Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000

*Counsel to NYC NPL Servicing, LLC*