**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott

*Counsel to NYC NPL Servicing, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                              :
                                                                   :     Chapter 11
51 EAST 73RD ST LLC                                                :
                                                                   :     Case No. 20-10683 (SHL)
                                        Debtor.    :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF (A) MOTION FOR ORDER
PURSUANT TO (1) 11 U.S.C. § 1112(b) DISMISSING CASE, (2) 11 U.S.C. § 543(d) (a)
EXCUSING RECEIVER FROM COMPLIANCE WITH SUBSECTIONS (A), (B) AND
(C) OF § 543, AND (b) AUTHORIZING THE RECEIVER TO CONTINUE
IN CUSTODY, POSSESSION AND CONTROL OF DEBTOR PROPERTY,
(3) 11 U.S.C. § 362(D), GRANTING RELIEF FROM THE AUTOMATIC STAY,
AND/OR (4) 11 U.S.C. §§ 361 AND 363(E) DIRECTING THE DEBTOR
TO PROVIDE ADEQUATE PROTECTION AND (B)
<u>APPOINTMENT OF CHAPTER 11 TRUSTEE</u>**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000

*Counsel to NYC NPL Servicing, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT  ............................................................................................1

BACKGROUND ....................................................................................................................4

I.    ARGUMENT....................................................................................................................4

    A.  NYC NPL Is Entitled to Adequate Protection Payments in the Amount of Interest Accruing at the Statutory Judgment Rate of 9% from No Later March 12, 2020, the Date on Which It Requested Adequate Protection and Further Adequate Protection in the Form of the Debtor Paying All Costs to Maintain the Premises, Including Without Limitation, All Real Estate Taxes, Insurance Premiums and Utility Bills ....................4

    B.  Because the Debtor is a Single Asset Real Estate Debtor, The Debtor Is Required to Begin Making Payments to NYC NPL in an Amount Equal to Interest at the Then Applicable Non-Default Contract Rate of Interest on the Value of NYC NPL's Interest in the Premises on or Before June 3, 2020....................................................................6

    C.  Cause Exists for the Appointment of a Chapter 11 Trustee and Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors and the Debtor's Estate..........8

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

***Cases:***

*In re Altman*,
  230 B.R. 6, 16 (Bankr. D. Conn. 1999),
  *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000) ..................................................9

*In re Ashley River Consulting, LLC*,
  No. 14-13406 (MG), 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) ...........................9

*In re Bayou Group, LLC*, 564 F.3d 541 (2d Cir. 2009) ......................................................9

*In re Best Prod. Co., Inc.*, 138 B.R. 155 (Bankr. S.D.N.Y.)
  *aff'd sub nom. In re Best Prod. Co.*, 149 B.R. 346 (S.D.N.Y. 1992) .....................................6

*In re Futterman*, 584 B.R. 609 (Bankr. S.D.N.Y. 2018) .......................................................9

*In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994) ........................................5

*In re Ritz–Carlton, Inc.*, 98 B.R. 170 (S.D.N.Y.1989) .......................................................6

*In re RYYZ*, LLC, 490 B.R. 29 (Bankr. E.D.N.Y. 2013) .................................................8

*Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*,
  4 B.R. 635 (Bankr. E.D.N.Y. 1980) ................................................................................10

*Motorola Credit Corp. v. Uzan*, 561 F.3d 123 (2d Cir. 2009) .........................................11

*New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184 (2d Cir. 2001) .......................10

*Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470 (S.D.N.Y.2013) ...............4

***Other Authorities:***

11 U.S.C. § 101(51B) ...............................................................................................6

11 U.S.C. § 361 ..............................................................................................1, 3, 14

11 U.S.C. § 362 ................................................................................................8

11 U.S.C. § 362(d) .........................................................................................1, 7, 14

11 U.S.C. § 362(d)(1) .......................................................................................4, 5

11 U.S.C. § 362(d)(3) ....................................................................................2, 3, 8

11 U.S.C. § 362(d)(3)(B)(ii) ........................................................................................8

11 U.S.C. § 362(g)(1) ..................................................................................................4

11 U.S.C. § 363 ......................................................................................................1, 4

11 U.S.C. § 363(e) .......................................................................................................1

11 U.S.C. § 364 ............................................................................................................4

11 U.S.C. § 543 ......................................................................................................1, 14

11 U.S.C. § 543(a-c) .............................................................................................3, 8, 14

11 U.S.C. § 543(d) ...............................................................................................1, 8, 14

11 U.S.C. § 1104 .......................................................................................................14

11 U.S.C. § 1104(a) ...................................................................................................10

11 U.S.C. § 1104(a)(1) .............................................................................................8, 9

11 U.S.C. § 1104(a)(2) .............................................................................................8, 9

11 U.S.C. § 1112 .....................................................................................................1, 14

11 U.S.C. § 1112(b)(1) ..........................................................................................13, 14

NYC NPL Servicing LLC ("NYC NPL"), by its counsel, hereby files this memorandum in accordance with the rulings made by the Court on the record during the hearing in this matter on April 28, 2020. (the "Interim Adequate Protection Ruling") in further support of (A) its motion seeking an order (1) pursuant to 11 U.S.C. § 1112 dismissing the case, (2) pursuant to 11 U.S.C. § 543(d), (i) excusing Bruce Lederman, in his capacity as court appointed receiver (the "Receiver") of the real property known as 51-53 East 73rd Street, New York, NY 10021 (Block: 1388, Lot: 30) (the "Premises"), which is presently owned by 51 East 73rd St LLC (the "Debtor"), from compliance with subsections (a), (b) and (c) of Section 543 of the Bankruptcy Code, and (ii) authorizing the Receiver to continue in custody, possession and control of the Premises, (3) pursuant to 11 U.S.C. § 362(d) granting relief from the automatic stay, and/or (4) pursuant to 11 U.S.C. §§ 361 and 363(e) directing the Debtor to pay monthly adequate protection payments to NYC NPL filed on March 12, 2020 [ECF Doc. No.: 8] ("Motion")[1] and (B) Request for Appointment of Chapter 11 Trustee, and respectfully states as follows:

## PRELIMINARY STATEMENT

If the Court is not inclined to grant relief from the automatic stay or dismiss the case as requested in the Motion, then in accordance with 11 U.S.C. §§ 361 and 363, NYC NPL is entitled to adequate protection of its interests in the Premises by way of monthly payments from the Debtor in the amount of the monthly interest that is accruing on the Debtor's secured mortgage obligations. NYC NPL holds a Judgment against the Debtor, which as of the Petition Date totaled $25,257,921.19. Pursuant to New York State law, interest continues to accrue at the statutory judgment rate of nine percent (9%). The per diem accrual of interest is $4,153.00, and the monthly accrual of interest is $186,083.96. NYC NPL's interests are not adequately protected by the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

interim award of adequate protection in the amount of $93,041.98 that was granted by the Court in the Interim Adequate Protection Ruling, and its interests are not adequately protected by the Debtor's alleged equity cushion, which does not exist.

As set forth in the appraisal annexed to the Declaration of Eric Goodman, dated May 8, 2020 (the "Goodman Declaration"), the fair market value of the Premises was estimated to be $25.9 million as of February 15, 2019.[2] It is indisputable that the real estate market has declined significantly since early 2019, and has declined drastically since the Petition Date as a result of Covid-19 pandemic. These facts and circumstances leave NYC NPL without adequate protection of its interests, unless it receives monthly payments equal to the interest that is accruing on the Debtor's obligations.

With regard to the date on which the Debtor is required to provide adequate protection, some courts in this Circuit have held that a debtor must provide adequate protection as of the Petition Date, while others have held that adequate protection must be provided as of the date a secured party makes a request for adequate protection. In this case, NYC NPL filed the Motion on March 12, 2020, and therefore is entitled to monthly adequate protection payments beginning no later than that date. It is respectfully submitted that the Court should direct the Debtor to provide monthly adequate protection payments in the amount of $186,083.96 beginning as of the Petition Date, but in any event, no event later than March 12, 2020.

Interestingly, because the Debtor is a single asset real estate debtor, it has an obligation, pursuant to 11 U.S.C. § 362 (d)(3), to pay monthly payments in an amount equal to interest at the non-default contract rate on the value of NYC NPL's interest in the Premises no later than June 3, 2020, which is the date that is 90 days after the Petition Date, unless the Debtor has filed a plan of

---

[2] NYC NPL anticipates submitting an updated appraisal prior to the hearing on May 15, 2020.

reorganization that has a reasonable possibility of being confirmed within a reasonable time. Pursuant to the terms of the Amended Note, the non-default contractual rate of interest on the Debtor's obligations is 9% (coincidentally, the same rate as the statutory judgment rate). As such, even if the Court determines that the Debtor is not required to make monthly adequate protection payments in the amount of $186,083.96 pursuant to Section 361 of the Bankruptcy Code, the Debtor would still be required to make monthly payments in the amount of $186,083.96, no later June 3, 2020 in accordance with Section 362(d)(3) of the Bankruptcy Code.

Additionally, if the Court is not inclined to excuse the Receiver from compliance with Sections 543(a)-(c) of the Bankruptcy Code as requested in the Motion, then the Court should instead direct the appointment of a Chapter 11 trustee for cause based upon the Debtor's management's mismanagement, dishonest and illegal conduct, and because it is in the best interests of the Debtor's estate and its creditors. As detailed in the Motion, the Debtor's management had historically conducted an illegal short-term rental program in the Premises, and continued to do so even after the State Court appointed the Receiver, directed the Debtor not to interfere with the Receiver's performance of his duties, and directed the Debtor to turnover any rent it collected after the Receiver's appointment. The Debtor's misconduct was so pervasive that the Receiver was forced to file a contempt motion, and the Debtor, its alleged manager, and its alleged sole shareholder were found to be in contempt. Despite the issuance of the Contempt Order, to this date, the Debtor and its management have not turned over any rent that was collected by the Debtor after the Receiver was appointed. In an effort to cover up its misconduct, the Debtor's manager falsely swore under penalty of perjury that the Debtor received no revenue since January 1, 2018, despite also swearing under penalty of perjury in her declaration submitted pursuant to Rule 1007, that the Debtor had several short term tenants in the Premise when the Receiver was appointed in

3

November 2018. Notably, the Debtor has also failed to pay its taxes and utilities when due and failed to maintain appropriate insurance on the Premises.

The Debtor's management is simply not fit to manage the Debtor or the Premises during the pendency of this case. The Debtor's pre-petition and post-petition conduct have destroyed any trust between it and creditors, and such conduct warrants appointment of a Chapter 11 trustee for cause and because it in the best interest of the Debtor's estate and its creditors.

## BACKGROUND

The relevant background is set forth in the Motion.

## ARGUMENT

**A. NYC NPL Is Entitled to Adequate Protection Payments in the Amount of Interest Accruing at the Statutory Judgment Rate of 9% from No Later March 12, 2020, the Date on Which It Requested Adequate Protection, and the Debtor Must Pay All Costs to Maintain the Premises, Including Without Limitation, All Real Estate Taxes, Insurance Premiums and Utility Bills.**

Once the amount and extent of the secured claim has been set, the burden shifts to a debtor seeking to use, sell, lease, or otherwise encumber the lender's collateral under sections 363 or 364 of the Code to prove that the secured creditor's interest will be adequately protected. *See Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 477–78 (S.D.N.Y.2013) (holding that the creditor seeking adequate protection "need only establish the validity, [priority, or extent] of its interest in the collateral, while the Debtor bears the initial burden of proof as to the issue of adequate protection"). In contrast, a secured creditor seeking to lift the automatic stay under section 362(d)(1) "for cause, including lack of adequate protection," bears the burden of showing that the debtor lacks equity in the property. 11 U.S.C. §§ 362(d)(1), 362(g)(1). However, where a debtor raises the existence of an equity cushion in response to a motion seeking relief from

the stay under Section 362(d)(1) of the Bankruptcy Code, the Debtor carries the burden to prove it. *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994).

In this case, the Debtor seeks to use the Premises to engage in an illegal post-petition short term rental business and alleges that it should be allowed to do so without providing any adequate protection payments to NYC NPL, because there is an alleged equity cushion between the alleged value of the Premises and the amount of NYC NPL's secured claim. In the Motion, NYC NPL sought relief from the stay, in part, pursuant to Section 362(d)(1) of the Bankruptcy Code, based upon a lack of adequate protection. In response, the Debtor argued that NYC NPL is adequately protected by an alleged equity cushion. It submitted an appraisal that is more than two years old, which uses comparative sales from the height of the market, during the period from 2014 to 2017, to arrive at an incredible $38 million valuation. The Debtor's evidence on valuation is not credible because it is outdated. However, if, because of the unusual circumstances created by the Covid-19 pandemic, the Court will consider appraisals of more than two years old as evidence of current value, then NYC NPL submits that the Court should consider the appraisal annexed to the Goodman Declaration, which estimated the fair market value of the Premises to be approximately $25.9 million as of February 2019. There can be no doubt that the value has decreased since that time, because the real estate market has indisputably softened considerably since February 2019, both as result of ordinary market conditions and the impact of Covid-19.

In this case, NYC NPL holds a judgment that totaled $25,257,921.19 as of the Petition Date, and as of May 8, 2020 amounts to $25,620,784.92. *See* Goodman Declaration, Exhibit B. The calculation of the Judgment is contained in the Goodman Declaration. The Debtor cannot challenge NYC NPL's entitlement to, or the amount of the Judgment in this Court because of the applicability of the *Rooker Feldman* Doctrine. Regardless, there is no good faith basis to dispute

the calculation of the amount due as of this date either, since that amount was calculated in accordance with the directives of the State Court as set forth in the Judgment.

NYC NPL submits that there is no equity cushion because the value of the Premises is less than the amount of the Judgment, and even if there was a small equity cushion, there can be no doubt that in the current market any such equity is eroding daily as the Covid-19 pandemic continues. NYC NPL can only be adequately protected in this case by receiving payments equal to the monthly interest accruing on the Debtor's obligations. It is respectfully submitted that the Court should direct the Debtor to provide monthly adequate protection payments in the amount of $186,083.96 beginning retroactively, as of the Petition Date, but in any event, no event later than March 12, 2020.

With regard to timing of adequate protection, the general rule is that for adequate protection purposes a secured creditor's position as of the petition date is entitled to adequate protection against deterioration. *In re Ritz–Carlton, Inc.*, 98 B.R. 170 (S.D.N.Y.1989). However, the scope of the applicability of *Ritz-Carlton* was questioned in *In re Best Prod. Co., Inc.*, 138 B.R. 155, 157 (Bankr. S.D.N.Y.), *aff'd sub nom. In re Best Prod. Co.*, 149 B.R. 346 (S.D.N.Y. 1992), where the Court determined that the date of entitlement to adequate protection is the date on which the request for adequate protection is made. Although there is some lack of agreement between the Courts, there is clear agreement that adequate protection must be provided no later than the date on which a secured creditor requests adequate protection, which here was March 12, 2020, only 9 days after the Petition Date.

**B. Because the Debtor is a Single Asset Real Estate Debtor, the Debtor is Required to Begin Making Payments to NYC NPL in an Amount Equal to Interest at the Then Applicable Non-Default Contract Rate of Interest on the Value of NYC NPL's Interest in the Premises on or Before June 3, 2020.**

Pursuant to 11 U.S.C. § 101(51B), "single asset real estate" means:

real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

In the Rule 1007 Declaration, the Debtor's manager described the Debtor's business as consisting of "owning and operating certain real estate located at 51-53 East 73rd Street, New York, New York, a building containing **18 rental units** consisting of four **(4)** doctor's units and **16** residential units." **(emphasis added)**[3] As of the Petition Date, the Debtor had no assets than the Premises and had no operations other than operating the Premises. As of the Petition Date, the Debtor's only potential source of income is the Premises. Based on the foregoing, the Debtor is a single asset real estate debtor.

Section 362(d) of the Bankruptcy Code provides in part as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
>
> *   *   *
>
> (d)(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that—
>
> (i)     may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

---

[3] This is further evidence of the Debtor's credibility issues. It does not even count the number of units consistently.

(ii)     are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362.

In a dispute concerning the amounts required to be paid pursuant to 11 U.S.C. § 362(d)(3)(B)(ii), the creditor will have the burden of establishing it has a secured interest in the property and the amount of its claim, and the debtor will have to demonstrate it timely made or proffered payments equal to the nondefault contract rate of interest on the value of the creditor's interest in the real estate. *In re RYYZ*, LLC, 490 B.R. 29, 37 (Bankr. E.D.N.Y. 2013).  As discussed above and in the Motion, the amount of NYC NPL's claim and the validity of its security interest in the Premises were established in the Judgment, and cannot be challenged by the Debtor in this Court.  The non-default contractual rate of interest in the Amended Note is the same as the statutory judgment rate - 9%.  If the Court determines that the Debtor is not required to provide additional adequate protection to NYC NPL because the value of the Premises exceeds the value of NYC NPL's claim, thereby creating an equity cushion, then NYC NPL's entire claim would be secured, and NYC NPL would be entitled to interest on the full amount of the Judgment at the non-default contractual rate of 9% pursuant to Section 362(d)(3), which equals $186,083.96 per month.

## C. Cause Exists for the Appointment of a Chapter 11 Trustee and Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors and the Debtor's Estate.

In the Motion, NYC NPL requested entry of an order pursuant to Section 543(d) of the Bankruptcy Code, excusing the Receiver from compliance with Sections 543(a)-(c) of the Bankruptcy Code, so that the Receiver can continue in possession of the Premises.  If the Court is not inclined to grant that portion of the Motion, then NYC NPL submits that appointment of a Chapter 11 trustee is warranted.

Section 1104(a)(1) and (2) of the Bankruptcy Code provides:

(a) At any time after the commencement of a case but before confirmation of a plan, on request of a
party in interest or the United States Trustee, and after notice and a hearing, the Court shall order the appointment of a trustee –

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor....

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor ....

11 U.S.C. § 1104(a)(1)-(2).

In the Second Circuit, the movant has the burden of showing by clear and convincing evidence that the appointment of a trustee is warranted. *In re Bayou Group, LLC*, 564 F.3d 541, 546 (2d Cir. 2009). Once a court finds that cause exists, the court has no discretion and a trustee must be appointed. *In re Futterman*, 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018). The list of wrongs constituting "cause" is non-exclusive; thus "[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015)(citing *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), aff'd in part, vacated in part, 254 B.R. 509 (D. Conn. 2000). A court may consider both the pre- and post-petition misconduct of the current management when making

the determination that "cause" exists for the appointment of a trustee. *Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635, 644-45 (Bankr. E.D.N.Y. 1980).

Alternatively, where, as here, a motion to dismiss a case has been filed, the court shall dismiss the case under this chapter for cause, unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. NYC NPL has established the existence of cause to dismiss the case in the Motion. Therefore, the Court has the authority to appoint a Chapter 11 trustee if it deems such appointment would be in the best interests of the Debtor's creditors and its estate.

The appointment of a Chapter 11 trustee is warranted in this case as a result of the Debtor's pre-petition and post-petition fraudulent and dishonest conduct, and the gross mismanagement of the Debtor's business affairs. As detailed in the Motion and the Klestadt Declaration [ECF Doc. No.: 10-5] at Exhibit E, on December 12, 2019, the State Court entered an order finding the Debtor, Simone Ender and Monique Ender Silberman in civil contempt of the State Court by reason of:

a.      their failure to turn over to the Receiver within five (5) days after the Receiver becomes qualified any deposits or advances of rental as security under any lease or license agreement affecting space in the premises affected by this action;

b.      their failure to turn over to the Receiver all rent lists, orders, unexpired and expired leases. agreements, correspondence, notices and registration statements relating to rental spaces or facilities in the premises;

c.      their failure to turn over to the Receiver all rents collected from and after the date of July 17, 2018;

d.      their failure to refrain from collecting the rents, license fees and other charges of said premises after July 17, 2018, and

e.      their failure to refrain from renting out apartment units in the subject Premises after July 17, 2018.

f.      their failure to turn over keys and documents requested by the Receiver by March 15, 2019.

The Court may take judicial notice of the factual findings in the Contempt Order. *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 199 (2d Cir. 2001)(taking judicial notice of

factual findings in District Court contempt order); *see also Motorola Credit Corp. v. Uzan*, 561

F.3d 123, 127 (2d Cir. 2009)(taking judicial notice of the record as set forth in 10 prior decisions

of the lower courts).

As anyone who has practiced in the New York State Courts knows, contempt orders are

unusual. Their issuance is extremely rare, and is typically limited to situations where the

complained of conduct is so egregious and so continuous that the Court has no alternative. The

simple fact that the State Court deemed it necessary to issue the Contempt Order tells this Court

all it needs to know about the Debtor's management.

Even more troubling is that the Debtor continues to falsely state in its bankruptcy pleadings

that it did not collect rent and that it fully cooperated with the Receiver despite the State Court's

findings to the contrary, and despite contradictory statements elsewhere in the very same

pleadings. We know that the Debtor did in fact collect such rent, because (i) the State Court made

a finding to that effect, and (ii) the Debtor admitted at paragraph 12 of the Declaration of Monique

Ender Silberman [ECF Doc. No. 1] (the "Rule 1007 Declaration"), that it continued to allow short

term rentals even after the appointment of the Receiver in November 2018. In her continuing

effort to secrete estate assets, the Debtor's manager appears to have committed perjury when she

swore under penalty of perjury, in the Debtor's Statement of Financial Affairs [ECF Doc. No. 22]

(the "SOFA"), that the Debtor has had no revenue since January 1, 2018.

Moreover, the Debtor has stated in its Application in Support of Request for Use of Cash

Collateral and Turnover [ECF Doc. No. 4] (the "Cash Collateral Motion), that if it is able to regain

possession of the Premises, it intends to again allow illegal short terms rentals that would expose

the Debtor to significant fines from local governments.[4] The Court should not allow the Debtor to

---

[4] In the Exhibit to the Cash Collateral Motion entitled Monthly Income and Expenses, the Debtor assumes income in the amount of $120,000 per month based upon the Debtor "leasing to all short-term rentals."

restart its illegal short term rental scheme by allowing the Debtor to regain possession of the Premises.

In addition, the Debtor has also failed to adequately maintain the Premises. NYC NPL has advanced approximately $58,000 for maintenance costs relating to the Premises. *See* Goodman Declaration, ¶ 3. In addition, the Debtor has failed to pay real estate taxes when due and failed to maintain appropriate insurance on the Premises. By way of example, the Debtor failed to pay real estate taxes in the amount of approximately $170,000 that were due on April 1, 2020, and only paid those taxes after the Court directed it to do so after NYC NPL alerted the Court that the taxes were past due.

Further, the Debtor's statement of financial affairs contains obviously false statements designed to cover up management's wrongful conduct. The Debtor states in its SOFA that it has not had realized any revenue since at least January 1, 2018. This is false, as evidenced by the State Court's findings relating to the Contempt Order. The State Court held the Debtor, its alleged manager, and its alleged sole member in contempt after finding that they collected rents after January 1, 2018 and failed to turn them over to the Receiver. The Debtor's pleadings in this case also contradict its false statement in the SOFA. In the Rule 1007 Declaration and in its Cash Collateral Motion, the Debtor alleges that it had a robust short-term rental program that resulted in as much as $8,000 in receipts per month at least until the Receiver was appointed on November 5, 2018. The Debtor has not explained these inconsistencies, and appears to be engaging in dishonest post-petition conduct in an effort to cover up its dishonest prepetition conduct.

This is a Debtor that has shown over and over that it does not conduct business in an honest manner, and its standard operating procedure is to ignore its obligations until someone seeks redress from the courts. The Debtor's case has thus far has had significantly less transparency than

the bankruptcy process demands. The creditors and the Office of the United States Trustee have thus far been burdened with the obligation to carefully supervise the Debtor to ensure that it preserves the value of its assets, and complies with the ordinary obligations of a debtor in possession, including paying taxes, paying for utilities, obtaining insurance, filing operating reports, honestly completing schedules and statement of financial affairs.

The Debtor has misused its assets and funds, has engaged in fraudulent and dishonest conduct and suffers from a lack of credibility and a lack of creditor confidence. Based on the Debtor's course of conduct over the last several years and the fraudulent statements contained in the SOFA regarding historic revenue, good cause exists for the appointment of a Chapter 11 trustee.

In addition, appointment of a Chapter 11 trustee is also warranted because it is in the best interests of the Debtor's estate and its creditors. *See* 11 U.S.C. 1112(b)(1). A debtor's creditors should not be forced to act as night watchman to ensure the Debtor's management does not loot the Debtor's estate, or expose it to expensive fines by engaging in an illegal short term rental scheme, or ensure that the Debtor complies with the most basis obligations of a debtor such as filing operating reports, paying taxes and paying utility bills. But that is exactly where NYC NPL has found itself thus far in the case.

For all of the reasons stated above, and in the Motion, there is adequate cause to appoint a Chapter 11 trustee, and such appointment would be in the best interests of the Debtor's estate and its creditors.

# **CONCLUSION**

Based upon the foregoing, it is respectfully requested that the Motion be granted in all respects, and that the Court enter an order, (i) pursuant to Section 1112 of the Bankruptcy Code dismissing the case, or alternatively, (ii) pursuant to Section 543(d) of the Bankruptcy Code, excusing the Receiver's compliance with subsections (a), (b) and (c) of Section 543 in the best interest of creditors of the estate, and continue in custody, possession and control of the Receivership Funds, or alternatively, (iii) pursuant to Section 362(d) of the Bankruptcy Code granting relief from the automatic stay to allow NYC NPL to proceed with the foreclosure sale of the Premises, or alternatively, (iv) pursuant to Section 361 of the Bankruptcy Code directing the Debtor to pay to NYC NPL monthly adequate protection payments in the amount of $186,083.96 retroactive to the Petition Date, or alternatively, (v) pursuant to Section 1104 or 1112(b)(1) of the Bankruptcy Code appointing a Chapter 11 trustee, and (vi) granting such other relief as the Court deems appropriate.

Date: May 8, 2020
      New York, New York

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ Tracy L. Klestadt*
    Tracy L. Klestadt
    Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000

*Counsel to NYC NPL Servicing, LLC*